UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HENRY B. BERROCAL,

Humanity for wisdom
Plaintiffs,

Case: 1:26–cv–03244 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 9/8/2026
Description: Pro Se Gen. Civ. (F–DECK)

V.

**1. THE UNITED STATES COURTS ADMINISTRATOR OFFICER Robert J. Conrad, Jr. Official capacity** and individual capacity
2. **Attorney General of the United States, Pamela Bondi individual and official capacity,**
**3. Attorney General of Texas, Ken Paxton individual and official capacities**
**4. United states**

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND STRUCTURAL RELIEF ACCESS TO THE COURTS

**JURISDICTION AND VENUE** This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, together with the Court's inherent equitable powers.

**42 U.S.C. § 1983** to preserve a claim for damages against officials acting under color of law.

Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because Defendants reside in or operate from the District of Columbia, the Department of Justice and the Administrative Office of the United States Courts are headquartered in this District, and the systemic administrative policies and practices challenged originate in and are coordinated through federal offices located in Washington, D.C.

**PARTIES**

**Plaintiffs**

1. **HENRY B. BERROCAL**, an individual civil-rights advocate, criminology researcher, and pro se litigant since 2023. Plaintiff brings claims for declaratory and injunctive relief, as well as damages caused by obstruction of court access.

2. **HUMANITY FOR WISDOM LLC**, a nonprofit organization focused on civil-rights advocacy and research, of which Plaintiff Berrocal is the authorized representative. The organization brings claims for declaratory and injunctive relief regarding systemic barriers to court access, including policies, administrative practices, and procedures that obstruct meaningful litigation and public-interest research.

RECEIVED
SEP 08 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**Defendants**

1. **UNITED STATES OF AMERICA** institutional defendant, sued in **official capacity** only, to permit systemic, declaratory, and structural relief addressing federal administrative and procedural practices that affect access to courts.

2. **PAMELA BONDI** Attorney General of the United States sued in:
   **Official capacity**: for declaratory and injunctive relief regarding DOJ policies, U.S. Marshals, and coordination with state actors that obstruct access to federal courts.
   **Individual capacity**: for damages under 42 U.S.C. § 1983 and other law for deliberate indifference constitutional rights if aware of obstruction and failed to act.

3. **ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS Robert J. Conrad, Jr.**
   **Official capacity**: for declaratory and injunctive relief to reform clerk operations, electronic filing systems, and nationwide court administrative policy.
   **Individual capacity**: for damages if deliberately indifferent to systemic obstruction

4. **KEN PAXTON**, Attorney General of Texas sued in:
   **Official capacity**: for declaratory and injunctive relief addressing state-level obstruction affecting access to courts.
   **Individual capacity**: for damages for deliberate indifference to obstruction of constitutional rights.

**Defendants Acting Under Color of Law**

All named defendants act or acted **under color of law**, meaning they exercised official authority derived from federal or state office and their policies, practices, or deliberate inaction directly affected Plaintiff's ability to access the courts.

1. **United States of America** – As the institutional federal government, the United States establishes, funds, and administers nationwide court systems, including policies for clerks, electronic filing, and PACER access. Its administrative structures enabled or permitted the cumulative obstruction of Plaintiff's filings and access to courts.

2. **Merrick B. Garland, U.S. Attorney General** – Garland, in his official capacity, exercises authority over the Department of Justice, U.S. Marshals, and coordination with state actors. His office enforces federal law and supervises federal officers whose decisions and actions or failures to act directly impaired Plaintiff's access to judicial review. In his individual capacity, if Garland knew of obstruction and failed to act, that constitutes **deliberate indifference** to Plaintiff's constitutional rights.

3. **Robert J. Conrad, Jr., Director, Administrative Office of the U.S. Courts** The Director controls nationwide court administrative policies, clerk operations, and electronic filing systems. Decisions or policies that block, delay, or render filings effectively impossible constitute actions under color of law. Deliberate indifference to systemic obstruction can

give rise to individual-capacity claims.

4. **Ken Paxton, Attorney General of Texas** – Paxton oversees law enforcement and prosecutorial practices in Texas. State actors who obstruct access to the courts while performing official duties act under color of state law. If Paxton or his office were aware of obstruction and failed to act, that demonstrates deliberate indifference in violation of constitutional rights.

**Weaponizing "Judicial Notice" to Bypass Evidentiary Hearings & The District Court's Ongoing Refusal of Hearing on Systemic Fraud**

***Berrocal v. Bondi, Paxton, & Wells Fargo Bank, N.A.***

**Originating W.D. Tex. No. 5:25-CV-00279-OLG-HJB | 5th Cir. Appeal No. 25-50617**

**1. The Fifth Circuit's Weaponized "Judicial Notice" (Appeal No. 25-50617)**

- **The Stated Appellate Reasoning:** The Fifth Circuit panel (Graves, Ho, and Douglas, Circuit Judges) affirmed the denial of a preliminary injunction and dismissed the appeal as frivolous under 5th Cir. R. 42.2 and *Baugh v. Taylor*. The panel held that no evidentiary hearing was required because the district court properly took judicial notice under Federal Rule of Evidence 201(d) of a recorded Substitute Trustee's Deed to establish that the real property at 8402 Timber Belt had been sold at a foreclosure sale on April 1, 2025.
- **The Appellate Due Process Subversion:** Federal Rule of Evidence 201 permits judicial notice exclusively for adjudicative facts that are *not subject to reasonable dispute*. Here, the entire basis of the underlying Section 1983 and diversity action was that the foreclosure was void, fraudulent, and executed without constitutional due process through fabricated notices, improper arrests, and squatter collusion. By accepting the recorded deed as uncontroverted proof on a cold record, the court judicially noticed the exact fraudulent instrument being challenged, pre-judging the merits of the lawsuit to bypass the required evidentiary hearing under Federal Rule of Civil Procedure 65.

**2. The Western District's Post-Mandate Refusal to Hold Hearings on Ongoing Fraud (ECF Nos. 65–76)**

Following the Fifth Circuit's mandate, the District Court continued a pattern of suppressing evidence of ongoing fraud, property spoliation, and title manipulation through summary text-only orders without holding hearings:

- **Suppression of Evidence of Title-Washing & Shell Fraud:** On May 12, 2026, I filed a formal *Notice of Fraud Upon the Court and Supplemental Evidence of Coordinated Jurisdictional Bypass* (ECF No. 66). On July 25, 2026, I filed an *Emergency Motion for Civil and Criminal Contempt, Sanctions, and an Order to Show Cause* with seven exhibits (ECF No. 70), alongside a *Notice of Filing Supplemental Exhibit H: Evidence of Texas Statewide Title-Washing, Corporate Shell Fraud, and Statutory Felony*

*Enhancements* (ECF No. 71). These filings presented concrete evidence that the property title was being actively manipulated through corporate shells to obstruct federal jurisdiction.

- **Emergency Injunction on Real Property Waste & Spoliation:** On August 8, 2026, I filed an *Emergency Supplemental Notice of Active Real Property Waste, Evidence Spoliation, and Motion for an Immediate Temporary Restraining Order Against Wells Fargo Bank, N.A. and Its Downstream Proxies* (ECF No. 75), submitting Exhibits A–F documenting active destruction and disposal of physical property at 8402 Timber Belt.
- **Refusal to Conduct Evidentiary Hearings:** Despite verified allegations of active evidence destruction and fraud upon the court, Magistrate Judge Henry J. Bemporad entered a summary text-only order on August 12, 2026 (ECF No. 75 text order): *"Text Order DENYING 70 Motion for Sanctions entered by Judge Henry J. Bemporad. After careful consideration of the motion, response, and reply, the motion is DENIED for reasons set out in the response of Wells Fargo Bank, N.A. (See Docket Entry 73.)"*

- **Deprivation of Rule 72(a) Review:** The Magistrate Judge disposed of criminal contempt, felony title fraud, and evidence spoliation motions by adopting the defendant's opposition wholesale into a text-only entry without conducting an evidentiary hearing, oral argument, or issuing written findings of fact. On August 16, 2026, I filed formal Objections under Rule 72(a) and an *Emergency Notice of Constructive Terminating Sanctions for Continuous Bad-Faith Procedural Obstruction, Fraud Upon the Court, and Real Property Spoliation* (ECF No. 76).

### 3. Expanded Legal Analysis Under *Christopher v. Harbury*, 536 U.S. 403 (2002)

Under ***Christopher v. Harbury*, 536 U.S. 403, 413–15 (2002)**, an access-to-courts violation requires establishing (1) a nonfrivolous, arguable underlying legal claim, and (2) official action that frustrated the litigation to the point that a remedy was completely lost:

- **The Underlying Nonfrivolous Remedy:** My underlying claims against Wells Fargo, state officials, and federal actors sought equitable rescission of a fraudulent foreclosure, damages for civil rights violations under Section 1983, and emergency injunctive relief to halt the physical spoliation of real property and assets exceeding $200,000.
- **The Structural Denial of Access:** The combined conduct of the Western District of Texas and the Fifth Circuit formed an impenetrable procedural barrier:
    1. *At the trial level*, the District Court used text-only orders to summarily deny emergency TROs, contempt motions, and spoliation notices without holding an evidentiary hearing, adopting the defendant bank's pleadings verbatim while refusing to examine documentary proof of fraud (ECF Nos. 66–76).
    2. *At the appellate level*, the Fifth Circuit insulated this practice by using Rule 201 judicial notice to accept the contested foreclosure deed as conclusive fact, branded the constitutional challenge "frivolous," and mooted pauper status to impose financial barriers (Appeal No. 25-50617).
- **The Irretrievable Legal Injury:** By refusing to hold an evidentiary hearing where witnesses could be examined, deeds challenged, and spoliation halted, the courts

allowed the physical property and claim file to be altered or liquidated outside the judicial process. This administrative refusal permanently extinguished the ability to obtain effective injunctive relief, transforming an active federal lawsuit into a closed proceeding where meritorious constitutional and property claims were disposed of without a single hearing on the merits.

## FACTUAL ALLEGATIONS CHRONOLOGICAL SUMMARY

### No access to the courts in the state of Texas

Cause No. DC2024CR1587 (437th District Court) and Cause No. CC707399 (County Court-at-Law No. 14).

On April 24, 2023, I was arrested in Bexar County, Texas, and subjected to two separate criminal prosecutions: a felony charge of Aggravated Assault with a Deadly Weapon under Cause No. DC2024CR1587 (437th District Court) and a misdemeanor charge of Deadly Conduct under Cause No. CC707399 (County Court-at-Law No. 14). Both underlying criminal proceedings were nonfrivolous and terminated in my favor: on November 13, 2024, the 437th District Court dismissed my felony prosecution with an official finding of **"Dismissed: Insufficient Evidence (OCA),"** and on January 28, 2025, County Court-at-Law No. 14 terminated my misdemeanor proceeding under **"FOUND 46B, REACHED MAXIMUM PERIOD OF CONFINEMENT AWAITING AN HHSC BED."**

Between January 8 and January 12, 2024, after I appeared at the Bexar County courthouse advocating for my speedy-trial rights, state authorities retaliated against me by escalating my bond from $25,000 to an unreachable **$750,000** in the felony matter and doubling my bail in the misdemeanor court, subjecting me to continuous 12-month detention at the Bexar County Adult Detention Center from January 11, 2024, through February 1, 2025.

Throughout this 12-month confinement, custodial authorities completely suppressed my constitutional right of access to the courts by locking me in my cell for 23 to 24 hours daily, denying me basic legal tools including pens, paper, envelopes, postage, and state legal forms and enforcing a policy of full hand-and-leg shackles during the single hour I was permitted out of my cell, which made the physical typing, drafting, and electronic submission of legal documents on the facility's kiosk physically impossible.

Despite these extreme custodial barriers, I managed to draft and submit multiple time-sensitive constitutional filings directly to the court, including my *Pro Se Motion for Speedy Trial* (docketed February 23, 2024), *Pro Se Motions for Bond Reduction* (docketed February 23, 2024, and April 8, 2024), *Pro Se Applications for Writ of Habeas Corpus Seeking Release* (docketed July 25, August 13, and August 29, 2024), and *Pro Se Motions to Suppress for Illegal Arrest* (docketed August 16 and August 19, 2024).

Because custodial officers blocked kiosk typing, denied mailing supplies, and prevented me from communicating with the court clerk, I was physically prevented from securing hearings or

prosecuting my *Pro Se Motion for Speedy Trial*, causing that nonfrivolous constitutional motion under the Sixth Amendment and Texas Code of Criminal Procedure Article 28.061 to sit unadjudicated for nearly nine months. This administrative and physical blockade caused an actual, irretrievable injury under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, by permanently depriving me of a timely statutory dismissal with prejudice and forcing me to endure 12 months of unlawful confinement before the State unilaterally dismissed the charges for lack of evidence.

Upon my release between January 28 and February 1, 2025, custodial officers systematically confiscated my active court records, draft pleadings, legal research, and grievance files, directly impairing my ability to meet pending appellate filing deadlines across Texas courts and the Fifth Circuit.

## Texas 4th court of appeals and Texas criminal court of appeals

Cause No. DC2024CR1587,

While detained in the Bexar County Adult Detention Center under Cause No. DC2024CR1587, I attempted to exhaust state appellate remedies by filing an original Petition for Writ of Mandamus and accompanying Writs of Habeas Corpus in the Texas Fourth Court of Appeals (*In re Henry Bryan Berrocal*, No. 04-24-00330-CR) to compel the 437th District Court to rule on my pending speedy-trial motions and address my unconstitutional bond increase.

On July 10, 2024, the Fourth Court of Appeals issued a per curiam memorandum opinion denying my petition for writ of mandamus under Texas Rule of Appellate Procedure 52.8(a) and dismissing my attached writs of habeas corpus for lack of jurisdiction under Texas Code of Criminal Procedure Article 11.05.

Following that dismissal, I escalated my nonfrivolous constitutional claims to the Texas Court of Criminal Appeals in Austin, seeking emergency relief against my continued unlawful detention. However, the Texas Court of Criminal Appeals never acknowledged, docketed, or ruled on my filings, completely ignoring my pro se petitions while I remained locked in maximum-security isolation.

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this total breakdown across the Texas intermediate and highest criminal appellate courts caused an actual, irreparable injury. Because the state appellate system summarily dismissed and ignored my emergency petitions while custodial officers kept me shackled and deprived of legal drafting supplies, every state remedial avenue was completely blocked, trapping my nonfrivolous constitutional speedy-trial claims in a procedural dead-end and forcing me to endure four additional months of unlawful incarceration until the underlying felony charge was finally dismissed for insufficient evidence on November 13, 2024.

## Federal district court for western district of texas san antonio division NO access to the courts

### Case 1st Berrocal v. San Antonio Police Department et al., No. 5:23-CV-1319

On October 17, 2023, I initiated a nonfrivolous civil rights action under 42 U.S.C. § 1983 in the United States District Court for the Western District of Texas (San Antonio Division), styled ***Berrocal v. San Antonio Police Department et al.*****, Civil Action No. 5:23-CV-01319-JKP**, paying the full $402 statutory filing fee (ECF No. 1). In that underlying action, I alleged actionable Fourth and Fourteenth Amendment claims including warrantless false arrest, unlawful vehicle impoundment, excessive force, and municipal liability against San Antonio police officers, municipal officials, and private contractors.

Between October 26 and November 9, 2023, I successfully served summonses on multiple primary defendants, including the Bexar County Adult Detention Center (ECF No. 8), Sheriff Javier Salazar (ECF No. 9), SAPD Chief William McManus (ECF No. 10), San Antonio Police Department Headquarters (ECF No. 14), Alanis Wrecker Service / Impound Facility (ECF No. 20), Great Northwest Community Center (ECF No. 21), James M. Garcia (ECF No. 26), and Gilbert Macias (ECF No. 37). When several defendants failed to timely answer or respond under Federal Rule of Civil Procedure 12(a), I became legally entitled to seek the entry of default and default judgment pursuant to Federal Rule of Civil Procedure 55, prompting me to file formal motions for default judgment against the Bexar County Adult Detention Center, Javier Salazar, and Joe Gonzalez (ECF No. 46), James M. Garcia (ECF No. 50), Gilbert Macias (ECF No. 51), and Mayor Ron Nirenberg (ECF No. 57).

On January 12, 2024, I physically entered the public intake counter at the Western District of Texas federal clerk’s office in San Antonio to docket supplemental default judgment filings and case records. While standing directly inside the clerk's office executing these filings, United States Marshals physically arrested and seized me without a valid warrant or probable cause, directly intercepting and blocking the physical submission and timestamping of my default judgment paperwork. Immediately following that courthouse arrest, state authorities escalated my bail to an unreachable $750,000 and placed me into continuous 12-month custodial isolation at the Bexar County Adult Detention Center, where custodial officers denied me pens, paper, envelopes, and state/federal forms, and enforced hand-and-leg shackling during out-of-cell recreation that made typing on the facility's electronic kiosk physically impossible.

While I was completely isolated in custody, Magistrate Judge Bemporad issued an Order for Responses (ECF No. 65) and an Order to Show Cause (ECF No. 66), imposing tight February 2024 response deadlines despite my lack of writing tools. I was forced to submit an emergency advisory that the Court construed as a Motion to Stay (ECF No. 68), resulting in successive stays that halted proceedings while I remained locked in solitary confinement (ECF Nos. 76, 80, 102). Throughout this 12-month detention, I submitted multiple emergency motions for injunctive relief to stop the ongoing obstruction and secure release, all of which were systematically denied, struck, or mooted without hearing:

- On June 5, 2024, I filed a Motion to Enforce-Enhance Relief against the State of Texas (ECF No. 81), which Magistrate Judge Bemporad summarily mooted and denied on June 13, 2024 (ECF No. 81 text order);
- On November 25, 2024, Magistrate Judge Bemporad entered a text order striking my renewed Motion for Default Judgment (ECF No. 100), asserting default judgment was legally unavailable (ECF No. 100 text order);
- On December 18, 2024, I filed a formal Motion for Preliminary Injunction (ECF No. 106), which Judge Pulliam denied on December 20, 2024 (ECF No. 107);
- On January 16, 2025, I filed an emergency Pro Se Motion for Preliminary Injunction seeking immediate release from unlawful state custody (ECF No. 108), which Judge Pulliam mooted on February 18, 2025, solely because I had already been released after enduring maximum statutory confinement (ECF No. 108 text order); and
- On June 4, 2025, I filed a renewed Motion for Emergency Relief Injunction (ECF No. 124), which Judge Pulliam denied on June 8, 2025 (ECF No. 126).

On June 17, 2025, Judge Pulliam granted Rule 12 motions dismissing SAPD Headquarters, Chief McManus, Frederick Garcia, Municipal Court, Development Services, Michael Shannon, and Alanis Wrecker, while unilaterally terminating Bexar County Adult Detention Center, Mayor Nirenberg, and Sheriff Salazar under Rule 4(m) despite executed summonses already appearing on the docket (ECF No. 127). On July 11, 2025, the Court dismissed the final defendant and closed the case (ECF No. 142). I promptly filed timely post-judgment motions including a Rule 59(e) Motion to Alter or Amend Judgment (ECF No. 146), a Motion to Amend Complaint (ECF No. 145), and a Motion for Certification of Judicial Impartiality and Venue Transfer (ECF No. 149) all of which Judge Pulliam denied in a blanket order on September 11, 2025, entering Final Judgment (ECF Nos. 155, 156, 157).

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this record establishes that my underlying Fourth Amendment lawsuit was nonfrivolous and resulted in an actual, irretrievable legal injury. The physical arrest executed directly inside the clerk's office, the systematic striking of default judgment applications, the summary denial of emergency preliminary injunctions during maximum-security confinement, and the imposition of PACER paywalls completely extinguished my procedural remedies, permanently destroying my entitlement to a default judgment under Rule 55(a) and derailing the timely adjudication of my constitutional claims.

### Case 2: *Berrocal v. Salazar*, No. 5:24-CV-00196-XR

On February 22, 2024, while held in maximum-security solitary confinement under an unreachable $750,000 bond at the Bexar County Adult Detention Center (Inmate #1171539), I initiated a nonfrivolous federal habeas corpus petition under 28 U.S.C. § 2241 / § 2254 in the U.S. District Court for the Western District of Texas (San Antonio Division), styled *Berrocal v. Salazar*, No. 5:24-CV-00196-XR (assigned to Judge Xavier Rodriguez) (ECF No. 1). In that petition, I challenged my unlawful pretrial detention, the retaliatory 2,000% bond increase, and the total suppression of my Sixth Amendment speedy-trial rights.

On February 28, 2024 just six days after filing and without serving the Respondent or conducting an evidentiary hearing Judge Rodriguez entered an Order of Dismissal and Final Judgment (ECF Nos. 4, 5), construing my petition under 28 U.S.C. § 2241 and summarily dismissing it without prejudice based on failure to exhaust state remedies and *Younger v. Harris* abstention. Judge Rodriguez simultaneously denied a Certificate of Appealability and dismissed my civil rights claims, asserting they could only be brought under 42 U.S.C. § 1983.

Throughout these proceedings, the District Court's accelerated summary dismissals combined with severe custodial suppression to completely extinguish my access to judicial review:

- On March 11, 2024, I filed a Motion for Default Judgment against Sheriff Javier Salazar (ECF No. 6), which Judge Rodriguez summarily denied via text order on March 14, 2024, citing the prior dismissal;
- On April 3, 2024, I filed a timely Notice of Appeal and Motion to Proceed *In Forma Pauperis* on Appeal (ECF Nos. 7, 8), which Judge Rodriguez denied on April 9, 2024 (ECF No. 9), certifying that my appeal was not taken in good faith;
- On April 26, 2024, Judge Rodriguez dismissed my Motion to Change Venue (ECF Nos. 12, 13);
- On June 5, 2024, I filed an emergency Motion to Enforce-Enhance Relief against the State of Texas (ECF No. 15), which the Court summarily dismissed on June 12, 2024 (ECF No. 16); and
- On September 3, 2024, after I submitted an emergency motion for miscellaneous relief (ECF No. 17), Judge Rodriguez entered a text order permanently barring me from the docket: "This case is closed. Petitioner is barred from filing anything further in the case." (ECF No. 17 text order).

Under *Christopher v. Harbury*, 536 U.S. 403 (2002), this record establishes an actual, irretrievable legal injury inside the District Court. By summarily dismissing my habeas petition within six days on abstention grounds while state courts refused to rule on my speedy-trial motions, denying IFP on appeal, and enforcing a total filing bar against me while I was physically shackled in solitary confinement without paper or law-library access, the District Court foreclosed all federal interlocutory review of my unlawful detention, forcing me to remain incarcerated under an unconstitutional bail until the underlying state felony was ultimately dismissed for insufficient evidence.

**Case 3: *Berrocal et al. v. The State of Texas et al.*, No. 5:25-CV-00503-FB**

On May 7, 2025, I initiated a nonfrivolous federal civil rights action under 42 U.S.C. § 1983 in the U.S. District Court for the Western District of Texas (San Antonio Division), styled *Berrocal et al. v. The State of Texas et al.*, Civil Action No. 5:25-CV-00503-FB

(assigned to Judge Fred Biery), paying the full $405 statutory filing fee and submitting two USB flash drives containing video evidence of official misconduct (ECF No. 1). In that action, I alleged actionable constitutional claims under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments regarding retaliatory arrests, unconstitutional bail increases, prolonged solitary confinement, physical abuse, and systemic denial of court access.

Summonses were issued on May 8, 2025 (ECF No. 2), and I promptly executed service on SAPD Chief William McManus and the San Antonio Police Department on May 16, 2025 (ECF No. 9). However, when I retained a licensed private process server to serve Bexar County and County Judge Peter Sakai at their official place of business, courthouse security physically barred my process server from accessing the 10th floor of the Paul Elizondo Tower, preventing personal delivery despite the process server waiting over an hour (documented by sworn affidavit).

Because I was unhoused, indigent, and lacked the financial means to continue paying private process servers, I filed an Affidavit of Hardship (ECF No. 30), a Motion to Proceed *In Forma Pauperis* (ECF No. 31), a Motion for Early Discovery to Identify John Doe Officers (ECF No. 32), a Motion for Service by U.S. Marshals under Rule 4(c)(3) (ECF No. 33), and a Motion for Alternative Service and Extension of Time (ECF No. 36).

Rather than resolving these service barriers, the Court created an insurmountable administrative deadlock:

- On October 9, 2025, Magistrate Judge Bemporad entered a text order mooting my IFP motion (ECF No. 31) solely because the initial $405 filing fee had been paid, completely refusing to evaluate my indigent status or authorize court-assisted service under 28 U.S.C. § 1915(d);
- On April 15, 2026, I filed my *Notice of Access-to-Courts Obstruction: Consolidated Motion for Alternative Service of Process, Extension of Time, Emergency Ruling*, alerting the Court that Magistrate Judge Bemporad's refusal to grant IFP status while letting service clocks run trapped the case in a procedural "mootness loop," requesting alternative service under Rule 4(j)(2) and Texas Rule 106(b), and requesting reassignment under 28 U.S.C. § 455;
- On March 4, 2026, Judge Biery entered a blanket order denying my Motion for Early Discovery (ECF No. 32), denying my Motion for Service by U.S. Marshals (ECF No. 33), and denying my Motion for Alternative Service (ECF No. 36), while terminating all unserved defendants (ECF No. 59);
- On March 11, 2026, Judge Biery denied my Motion to Proceed IFP on Appeal, certifying under 28 U.S.C. § 1915(a)(3) that my appeal was not taken in good faith and assessing $605.00 in appellate fees (ECF No. 60); and

- On April 13, 2026, Judge Biery entered Final Judgment dismissing the served municipal defendants under Rules 12(b)(6) and 12(c), and dismissing all unserved county and state defendants sua sponte under Rule 4(m) for **"want of prosecution"** (ECF Nos. 61, 62).

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this documented record establishes an actual, irretrievable legal injury inside the District Court. The Court created an impossible procedural Catch-22: it denied discovery to identify unnamed officers, mooted my IFP status to block statutory U.S. Marshal service, denied alternative service after courthouse security physically blocked access to county offices, and then dismissed the lawsuit under Rule 4(m) for failure to timely serve. This structural blockade permanently extinguished my nonfrivolous Section 1983 claims against state and county actors without allowing the case to reach an adjudication on the merits.

**Case 4: *Berrocal et al. v. Bexar County et al.*, No. 5:25-CV-01192-JKP**

On September 22, 2025, I initiated a nonfrivolous civil rights and malicious prosecution action under 42 U.S.C. § 1983 in the U.S. District Court for the Western District of Texas (San Antonio Division), styled *Berrocal et al. v. Bexar County et al.*, Civil Action No. 5:25-CV-01192-JKP (assigned to Judge Jason K. Pulliam and referred to Magistrate Judge Henry J. Bemporad), concurrently submitting a Motion for Leave to Proceed *In Forma Pauperis* (IFP) (ECF No. 1). In that action, I alleged actionable First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment violations arising from fabricated criminal charges, warrantless arrest, squatter occupation of my property, and the suppression of exculpatory 911 dispatch recordings by Bexar County prosecutors and municipal police officers.

Throughout the pendency of this action, the District Court enforced financial barriers and administrative hurdles that blocked my access to the court while I was unhoused:

- Denial of Trial-Level IFP: On October 10, 2025, Magistrate Judge Bemporad issued a Report and Recommendation advising that my IFP application be denied (ECF No. 3). Despite my timely objections documenting my lack of income and loss of assets (ECF No. 6), Judge Pulliam entered an order on October 22, 2025, overruling my objections, adopting the recommendation, denying IFP status, and ordering me to pay the full statutory filing fee by November 5, 2025, under threat of summary dismissal (ECF No. 8).
- Delayed Processing of Appellate IFP: After I filed a Notice of Appeal on October 23, 2025 (ECF No. 9), and subsequently submitted my Motion to Proceed IFP on Appeal on February 27, 2026, pursuant to Fifth Circuit instructions (ECF No. 12), the District Court left my appellate IFP motion unaddressed for five months until

July 28, 2026, before referring it back to Magistrate Judge Bemporad (ECF No. 14).

- Constructive Notice Fictions Imposed on Homelessness: On August 3, 2026, Judge Pulliam entered a Text Order Addressing Claim of Homelessness (ECF No. 15), refusing to send further court orders to my email address as a pro se litigant without an electronic filing grant and declaring that I would be legally "deemed to have received notice of all documents and orders that appear on the Court's official docket, whether or not [I] receive an email or hard-copy version." The Court directed me to either physically walk into the federal clerk's office to pick up paper orders or constantly monitor the docket independently, effectively conditioning notice of court deadlines on paying per-page PACER fees while indigent and living without a permanent residence.
- Subsequent Rulings: On August 4, 2026, I filed an emergency Pro Se Motion for Permission to File Electronically (ECF No. 16), which Magistrate Judge Bemporad granted on August 7, 2026 (ECF No. 18), followed by a Report and Recommendation regarding my appellate IFP motion on August 12, 2026 (ECF No. 19).

Under *Christopher v. Harbury*, 536 U.S. 403 (2002), this record establishes an ongoing and actual injury to my right of access to the courts. By denying initial IFP status despite verified indigency, threatening summary dismissal for nonpayment of fees, delaying appellate IFP adjudication for months, and deeming an unhoused litigant served with court orders without providing email or physical delivery, the District Court constructed structural procedural hurdles that directly impaired the timely prosecution of my nonfrivolous malicious prosecution and civil rights claims.

**Case 5: *Berrocal v. Valdespino et al.*, No. 5:25-CV-00521-OLG**

On May 12, 2025, I initiated a nonfrivolous civil rights action under 42 U.S.C. § 1983 in the U.S. District Court for the Western District of Texas (San Antonio Division), styled ***Berrocal v. Valdespino et al.*, Civil Action No. 5:25-CV-00521-OLG** (assigned to Judge Orlando L. Garcia and referred to Magistrate Judge Elizabeth S. Chestney), paying the full $405 statutory filing fee (ECF No. 1). In that action, I alleged actionable constitutional violations under the Fourth, Fifth, and Fourteenth Amendments regarding unlawful property dispossession, municipal and judicial obstruction of eviction proceedings against unauthorized squatters at 8402 Timber Belt, and the failure of law enforcement to intervene or protect my property rights, naming Judge Robert J. Valdespino, District Judge Laura Salinas, John Does 1–20, Alexandria Reyes, Robert Alcaraz, and Wilder Leonard Robison.

Throughout the proceeding, the District Court utilized screening mechanisms and administrative paywalls to terminate the action without service or discovery:

- **Denial of Emergency Injunctive Relief:** On May 12, 2025, I filed an emergency Motion for Temporary Restraining Order (ECF No. 2), which Judge Garcia summarily denied the next day on May 13, 2025, without a hearing (ECF No. 6).
- **Denial of Default Judgment:** On June 16, 2025, I moved for default judgment against the state judicial defendants (ECF No. 11), which Magistrate Judge Chestney dismissed on June 23, 2025 (ECF No. 12).
- **IFP Grant Coupled with Immediate § 1915(e) Dismissal and Service Refusal:** On July 10, 2025, I filed an Affidavit of Hardship (ECF No. 15), a Motion to Proceed *In Forma Pauperis* (ECF No. 16), and a Motion for Service by U.S. Marshals under Rule 4(c)(3) and 28 U.S.C. § 1915(d) (ECF No. 17). On July 21, 2025, Magistrate Judge Chestney issued a Report and Recommendation (ECF No. 25). On October 28, 2025, Judge Garcia adopted the recommendation in full (ECF No. 31): while the Court granted IFP status and ordered a refund of my $405 filing fee, it simultaneously **denied U.S. Marshal service** and **dismissed the entire Complaint sua sponte under 28 U.S.C. § 1915(e)**, closing the case before any summons could be served (ECF No. 31).
- **Administrative Delay of Fee Refund:** Despite the Court's October 28, 2025 refund order (ECF No. 31), the Clerk's Office failed to return the $405 filing fee for months, forcing me to file motions for status and enforcement (ECF Nos. 33, 36) that the Court mooted on January 5, 2026, while I remained unhoused and indigent.
- **Denial of PACER Fee Exemption:** On January 27, 2026, I filed a Motion for Waiver of PACER Fees (ECF No. 37) to monitor docket entries and appellate filings while unhoused. On January 30, 2026, Judge Garcia entered a text order denying the fee waiver, ruling that I had not demonstrated that an exemption was necessary to avoid unreasonable burdens, thereby conditioning my ability to review court orders on continuous per-page fee payments (ECF No. 37 text order).

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this documented record establishes an actual, irretrievable legal injury inside the District Court. By using Section 1915(e) to dismiss the lawsuit at the exact moment IFP status was granted—while explicitly refusing to order U.S. Marshal service under § 1915(d), withholding the ordered filing fee refund for months, and denying a PACER fee waiver to an indigent, homeless litigant the District Court completely foreclosed the opportunity to amend pleadings, conduct discovery on John Doe officers, or obtain service of process, permanently destroying the adjudication of my nonfrivolous constitutional property and due process claims on the merits.

**Case 6: *Humanity for Wisdom Community Center Health and Human Services et al. v. Samsung Electronics Co.*, No. 5:24-CV-00008-OLG**

On January 4, 2024, I initiated a civil warranty and consumer protection action in the U.S. District Court for the Western District of Texas (San Antonio Division), styled ***Humanity for Wisdom Community Center Health and Human Services and Henry B. Berrocal v. Samsung Electronics Co.*, Civil Action No. 5:24-CV-00008-OLG** (assigned to Judge Orlando L. Garcia and referred to Magistrate Judge Elizabeth S. Chestney), paying the full $405 statutory filing fee (ECF No. 1). In that complaint, I asserted nonfrivolous claims under the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301–2312), UCC §§ 2-313, 2-314, and 2-315, and the Federal Trade Commission Act, alleging that Samsung acted in bad faith by refusing to honor a 10-year compressor warranty on a non-functioning refrigerator solely due to a missing exterior sticker label (ECF No. 1). Summons was issued (ECF No. 2) and formally executed on Samsung's registered agent, CT Corporation, in Dallas, Texas, on January 9, 2024, setting Samsung's responsive pleading deadline for January 30, 2024 (ECF No. 5). Samsung failed to appear, answer, or file any responsive pleading.

Following Samsung's total default, my ability to prosecute the case was interrupted on January 12, 2024, when I was subjected to a warrantless physical arrest inside the federal courthouse clerk's office and placed into continuous solitary confinement at the Bexar County Adult Detention Center. While I was detained without access to legal drafting supplies, Magistrate Judge Chestney issued an Order to Show Cause regarding organizational counsel and the $50,000 Magnuson-Moss amount-in-controversy requirement (ECF No. 6). In response, I submitted an Advisory from jail requesting that the case be held in abeyance during my incarceration (ECF No. 7). On February 23, 2024, Magistrate Judge Chestney issued a Report and Recommendation to dismiss the entity plaintiff without prejudice and administratively close the case during my confinement (ECF No. 8), which Judge Garcia adopted on August 21, 2024, staying the action and administratively closing the docket (ECF No. 12).

Immediately upon my release from custody, on February 18, 2025, I filed a Notice of Change of Address (ECF No. 13), an Advisory (ECF No. 14), and a formal **Pro Se Motion for Default Judgment against Samsung** under Federal Rule of Civil Procedure 55 based on Samsung's complete failure to answer the January 9, 2024 summons (ECF No. 15), alongside motions for damages, interest, and costs (ECF Nos. 16, 17).

Rather than entering default or default judgment against the non-appearing corporate defendant, the Court raised sua sponte jurisdictional barriers to terminate the action:

- On March 4, 2025, Magistrate Judge Chestney issued a Report and Recommendation construing my advisory as a motion to reopen, but recommending that the case be summarily dismissed for lack of subject matter jurisdiction on the ground that the amount in controversy did not exceed $50,000, and recommending that my Motion for Default Judgment be denied as moot (ECF Nos. 18, 20);
- On March 14, 2025, I filed timely Objections (ECF No. 21) detailing incidental, storage, replacement, and consequential damages; and
- On March 20, 2025, Judge Garcia entered an Order Adopting the Report and Recommendation, overruling my objections, dismissing the action without prejudice for lack of subject matter jurisdiction, denying my Motion for Default Judgment as moot, and closing the case (ECF No. 22).

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this record establishes an actual, irretrievable legal injury inside the District Court. Samsung was properly served through its registered agent and wholly defaulted under Rule 12(a), entitling me to default proceedings under Rule 55. The physical arrest inside the federal clerk's office, the 12-month custodial stay, and the District Court's subsequent refusal to adjudicate or enter default judgment dismissing the case sua sponte on jurisdictional amount grounds after Samsung had already forfeited its appearance permanently extinguished my entitlement to a Rule 55 default remedy and foreclosed substantive recovery on my nonfrivolous consumer warranty claims.

**Case 7: *Berrocal et al. v. Auto Club County Mutual Insurance Company*, No. 5:25-CV-00474-FB**

On April 30, 2025, I initiated a nonfrivolous civil action in the U.S. District Court for the Western District of Texas (San Antonio Division), styled ***Berrocal et al. v. Auto Club County Mutual Insurance Company*, Civil Action No. 5:25-CV-00474-FB** (assigned to Judge Fred Biery and referred to Magistrate Judge Richard B. Farrer), on behalf of myself, Humanity for Wisdom, and Cycle of Management LLC, paying the full $405 statutory filing fee (ECF No. 1). In that complaint, I sought insurance recovery and damages for substantial property destruction and theft exceeding $200,000 resulting from unlawful intrusions and property damage at 8402 Timber Belt. Summons was issued and executed on Auto Club County Mutual Insurance Company on May 2, 2025 (ECF No. 4).

After Auto Club filed a Motion to Dismiss under Rule 12(b)(6) on May 23, 2025 (ECF No. 6), I promptly filed a Response and Motion to Amend Complaint with supporting exhibits on May 27, 2025 (ECF Nos. 7, 8). Over the next six months, while facing homelessness and destruction of property, I filed multiple emergency requests for

judicial intervention, including a Motion for Certification of Judicial Impartiality and Venue Transfer (ECF Nos. 10, 11), a Motion for Sanctions Due to Unreasonable Delay (ECF No. 12), an Emergency Motion for Expedited Ruling and Trial Setting (ECF No. 14), and an Emergency Motion for Temporary Restraining Order, Interim Partial Payment, and Preservation of Claim File (ECF No. 16).

Rather than granting emergency hearings or ruling on my pending Motion to Amend Complaint, the Court erected procedural barriers and threatened sanctions:

- **Threat of Rule 11 Sanctions and Counsel Requirement:** On November 24, 2025, Magistrate Judge Farrer issued an *Order to Retain Counsel and Show Cause* (ECF No. 19), ordering that the entity plaintiffs appear through licensed counsel within 21 days and ordering me to show cause why I should not be sanctioned under Federal Rule of Civil Procedure 11 for asserting allegedly frivolous claims.
- **Report and Recommendation to Dismiss:** On January 12, 2026, Magistrate Judge Farrer issued a Report and Recommendation advising that the Complaint be dismissed (ECF No. 26).
- **Final Judgment for "Want of Prosecution":** On March 4, 2026, Judge Fred Biery entered an Order Adopting the Report and Recommendation (ECF No. 30) and entered Final Judgment (ECF No. 31), ordering that the Complaint against Auto Club be dismissed for failure to state a claim and **"as well as for want of prosecution,"** despite my continuous, active filings and pending motions on the docket.
- **Denial of IFP on Appeal:** Following my Notice of Appeal (ECF No. 17), on March 23, 2026, Judge Biery signed an order officially denying my Motion to Proceed *In Forma Pauperis* on Appeal (ECF Nos. 24, 32), imposing the full $605 appellate fee burden on an indigent, unhoused litigant.

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this record demonstrates an actual, irretrievable legal injury inside the District Court. By refusing to rule on my timely Motion to Amend Complaint, ignoring emergency requests for evidence preservation and interim relief, threatening Rule 11 sanctions against an unhoused pro se litigant, dismissing the action for "want of prosecution" while numerous pro se motions were actively pending, and denying IFP on appeal, the District Court permanently foreclosed merits adjudication of my nonfrivolous insurance recovery claims.

## Federal 5th circuit cout of appeals no access to the courts

**Case 1: *Berrocal v. Salazar*, Appeal No. 24-50270 (Originating USDC No. 5:24-CV-196)**

On February 22, 2024, while detained in solitary confinement under an unconstitutional $750,000 bond at the Bexar County Adult Detention Center, I initiated a federal habeas corpus action in the U.S. District Court for the Western District of Texas, styled ***Berrocal v. Salazar*, No. 5:24-CV-196** (assigned to Judge Xavier Rodriguez), challenging my unlawful pretrial detention and the total denial of my speedy-trial rights. Following the district court's summary dismissal on exhaustion and *Younger v. Harris* abstention grounds, I filed a Notice of Appeal on April 3, 2024, which the Fifth Circuit docketed as Appeal No. 24-50270 on April 10, 2024.

Throughout this appellate proceeding, structural administrative barriers and custodial interference systematically suppressed my ability to litigate:

- On May 8, 2024, the Fifth Circuit Clerk refused to process an emergency *Writ of Mandamus* that I drafted from jail to compel adjudication of my unlawful detention, entering a docket restriction: **"DOCUMENT RECEIVED - NO ACTION TAKEN. No action will be taken at this time on the writ of mandamus received from Appellant Mr. Henry B. Berrocal because cannot process a writ of mandamus in an appeal"** (Doc. 15).
- On June 21, 2024, the Electronic Record on Appeal was transmitted to the Fifth Circuit missing the underlying evidentiary filings and state court dockets, officially certifying: **"Admitted Exhibits on File in District Court? No. Video/Audio Exhibits on File in District Court? No. State Court Papers included? No."** (Doc. 23), stripping the appellate record of proof regarding my pending state speedy-trial motions.
- Throughout May and June 2024, Bexar County custodial officers denied me pens, paper, envelopes, and state/federal legal forms, and maintained physical hand-and-leg shackles during my single hour outside my cell, making legal research into complex federal doctrines like *Younger* abstention and procedural default physically impossible.

On September 4, 2024, Circuit Judge James C. Ho issued an order denying my Motion for a Certificate of Appealability (Doc. 18), Motion to Change Venue (Doc. 17), and Motion to Proceed *In Forma Pauperis* (Doc. 13). Judge Ho ruled that because I did not meaningfully challenge the district court's rulings on exhaustion and *Younger* abstention, my constitutional claims were legally **"deemed abandoned"** under *Hughes v. Johnson*, 191 F.3d 607, 613 (5th Cir. 1999), and issued the mandate terminating my appeal on September 26, 2024 (Docs. 35, 37-1).

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this documented record establishes an actual, irretrievable constitutional injury. By refusing to docket my emergency mandamus petition, transmitting an incomplete appellate record lacking my state court papers, and denying me basic legal tools and law-library access in solitary confinement, the judicial and custodial system directly caused the procedural forfeiture and "abandonment" of my nonfrivolous habeas challenge, permanently extinguishing my federal remedy against unlawful pretrial detention before the underlying state felony charge was dismissed for insufficient evidence.

**Case 2: *Berrocal v. The State of Texas et al.*, Appeal No. 25-50936 (Originating USDC No. 5:25-CV-503)**

On November 6, 2025, I filed a timely Notice of Appeal from the Western District of Texas's interlocutory and service-related orders in *Berrocal v. The State of Texas et al.* (USDC No. 5:25-CV-503), which the U.S. Court of Appeals for the Fifth Circuit docketed as Appeal No. 25-50936 on November 12, 2025 (Doc. 1). The underlying appeal sought to vindicate nonfrivolous constitutional claims under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments regarding illegal arrests, retaliatory bail escalation, and physical interference with private process servers attempting to serve Bexar County officials.

Throughout this appellate proceeding, the Fifth Circuit created an administrative impasse that completely shut down my access to the court while I was unhoused and indigent:

- On December 3, 2025, when I submitted an emergency Motion to Proceed *In Forma Pauperis* (IFP) to the Fifth Circuit documenting my ongoing homelessness and lack of income, the appellate clerk refused to evaluate my poverty status and instead forwarded the motion back down to the District Court (Doc. 6);
- On December 12, 2025, when I submitted an emergency motion for expedited ruling, the Fifth Circuit Clerk refused to present the motion to a judicial panel, entering an administrative block on the docket: **"DOCUMENT RECEIVED - NO ACTION TAKEN. No action will be taken at this time on the Motion for expedied ruling received from Appellant Mr. Henry B. Berrocal because no pending motions in this court and IFP is pending in DC"** (Doc. 7);
- On March 27, 2026, the Fifth Circuit entered notice of Judge Biery's district court order certifying that my appeal was not taken in good faith, and the appellate clerk issued a directive ordering me to pay the full appellate filing fee by April 27, 2026 (Doc. 14); and
- On May 4, 2026, despite having verified under penalty of perjury that I had zero income, was sleeping in a vehicle, and had been blocked from court-assisted service, Fifth Circuit Clerk Lyle W. Cayce entered a summary order terminating my appeal: **"Under 5TH CIR. R. 42.3, the appeal is dismissed as of May 4, 2026, for want of prosecution. The appellant failed to timely pay the filing fee"** and issued the final mandate (Docs. 15, 15-1, 15-2).

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this documented record establishes an actual, irretrievable legal injury caused by appellate administrative barriers. By conditioning judicial review on a mandatory financial paywall, refusing to adjudicate my indigent status, and entering a summary dismissal under Rule 42.3 solely for failure to pay fees while ignoring documented homelessness, the Fifth Circuit completely foreclosed appellate review on the merits. This financial blockade permanently extinguished my ability to challenge Judge Biery's improper Rule 4(m) dismissals and the District Court's refusal to authorize alternative service or U.S. Marshal service under Rule 4(c)(3), insulating unconstitutional state and county actions from federal judicial oversight.

**Case 3: *Berrocal v. Bexar County et al.*, Appeal No. 25-50887 (Originating USDC No. 5:25-CV-1192)**

On October 23, 2025, following the District Court's denial of my *In Forma Pauperis* application in *Berrocal et al. v. Bexar County et al.* (USDC No. 5:25-CV-01192-JKP), I filed a timely Notice of Appeal and Transcript Request (ECF Nos. 9, 10), which the U.S. Court of Appeals for the Fifth Circuit docketed as Case No. 25-50887 on October 29, 2025. The appeal sought review of nonfrivolous constitutional claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and the Fourteenth Amendment arising from false arrest, malicious prosecution, squatter dispossession at 8402 Timber Belt, and the suppression of exculpatory 911 dispatch recordings by Bexar County prosecutors and municipal police officers.

Throughout this appellate proceeding, structural administrative barriers and procedural deadlocks completely obstructed my ability to litigate while indigent and unhoused:

- **IFP Forwarding and Mootness Loop:** On February 27, 2026, when I submitted my verified Motion to Proceed *In Forma Pauperis* on appeal, the Fifth Circuit Clerk forwarded the motion back to the District Court for filing (Doc. 13) while the appellate court concurrently marked my appellate IFP motion and supporting financial affidavit **"Moot"** (Doc. 18), creating an administrative loop that left my poverty status unresolved on the appellate docket.
- **Denial of Pro Se Entity Representation & Summary Severance:** Because I lacked funds to retain private counsel while unhoused, on March 3, 2026, I filed a motion requesting permission to represent my closely held entities (Cycle of Management LLC, Elegant and Happy LLC, and Humanity for Wisdom) (Doc. 16). On April 14, 2026, the Fifth Circuit entered an order denying my motion to appear as counsel for the entities and denying my motion to expedite the appeal (Doc. 26). Three days later, on April 17, 2026, the Fifth Circuit Clerk entered a summary order dismissing all three entity appellants from the case (Doc. 28).
- **Forced Procedural Exit Under Rule 42(b):** Facing continuous procedural standstills, unresolved IFP processing, the dismissal of the entity claims, and ongoing constructive notice burdens imposed while homeless, I was compelled on April 16, 2026, to file a Motion for Voluntary Dismissal pursuant to Federal Rule of Appellate Procedure 42(b) without prejudice to escape the Fifth Circuit bottleneck and pursue related claims in another jurisdiction (Doc. 29).
- **Final Dismissal and Mandate:** On May 4, 2026, a Fifth Circuit panel (Smith, Haynes, and Oldham, Circuit Judges) granted my motion to dismiss the appeal without prejudice (Doc. 38, Doc. 40-1), and the final mandate issued on May 26, 2026 (Doc. 40, Doc. 40-2).

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this documented record establishes an actual, irretrievable legal injury caused by appellate administrative bottlenecks. By trapping my IFP application in a jurisdictional referral loop, denying expedited review while I remained homeless, and summarily dismissing the organizational co-appellants for lack of counsel without addressing my verified indigency, the Fifth Circuit rendered meaningful appellate review impossible. This administrative impasse directly forced a voluntary dismissal under Rule 42(b) to avoid procedural forfeiture, permanently delaying and obstructing the timely appellate adjudication of my nonfrivolous civil rights and malicious prosecution claims on the merits.

**Case 4: *Berrocal v. Samsung Electronics Company*, Appeal No. 25-50259 (Originating USDC No. 5:24-CV-00008-OLG)**

Following the Western District of Texas's sua sponte dismissal of my consumer warranty action, on March 28, 2025, I filed a timely Notice of Appeal and paid the full $605.00 appellate filing fee (Receipt No. 7261). The United States Court of Appeals for the Fifth Circuit docketed the appeal as Case No. 25-50259 on April 4, 2025. The appeal sought review of nonfrivolous claims under the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301–2312) and Texas warranty law arising from Samsung's bad-faith refusal to honor a 10-year compressor warranty, as well as the district court's refusal to enter a default judgment under Federal Rule of Civil Procedure 55 after Samsung was properly served and completely failed to answer.

Throughout the appellate proceedings, administrative docket suppression and structural procedural refusals obstructed my ability to obtain meaningful review:

- **Omission of Evidentiary Exhibits:** On May 9, 2025, the Electronic Record on Appeal was transmitted to the Fifth Circuit missing the photographic and documentary exhibits I had filed below, officially certifying: **"Admitted Exhibits on File in District Court? No. Video/Audio Exhibits on File in District Court? No"** (Doc. 8).
- **Administrative Rejection of Emergency Motions:** On June 23, 2025, I submitted emergency motions for preliminary injunctive relief to halt ongoing retaliation and protect my legal claims. The Fifth Circuit Clerk entered administrative blocks on the docket stating **"DOCUMENT RECEIVED - NO ACTION TAKEN"** (Docs. 19, 20), refusing to present the emergency motions to a judicial panel on the grounds that the clerk could not determine the specific relief and because the motions referenced Supreme Court standards.
- **Uncontested Default Ignored:** Appellee Samsung Electronics Company never entered an appearance, never filed an appellee's brief, and submitted zero counter-evidence to dispute my verified damages.

On December 4, 2025, a Fifth Circuit panel (Clement, Graves, and Ho, Circuit Judges) issued an unpublished per curiam opinion and judgment affirming the district court's dismissal for lack of subject-matter jurisdiction (Docs. 49-1, 50). The panel held that to a "legal certainty," a $2,500 refrigerator failure could not generate over $50,000 in recoverable incidental and consequential damages under Texas Business and Commerce Code § 2.715, summarily rejecting my itemized $164,291.81 calculation (which detailed storage costs, meal expenses, lost productivity, and replacement costs) as implausible without permitting any evidentiary hearing or discovery. On December 6, 2025, I filed a formal Judicial Misconduct Complaint under the Judicial Conduct and Disability Act, documenting that the panel improperly anchored its decision on superseded punitive damages figures and evaluated damages plausibility on a cold record where the defaulting defendant never appeared.

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this record establishes an actual, irretrievable legal injury caused by appellate suppression. By refusing to submit my emergency motions to a judicial panel, transmitting an appellate record stripped of evidentiary exhibits, and

affirming a sua sponte dismissal on "plausibility" grounds without allowing factual development or discovery against a defaulted corporate defendant, the Fifth Circuit permanently extinguished my nonfrivolous Magnuson-Moss claims and completely eliminated my entitlement to a default judgment under Rule 55.

**Case 5: *Berrocal v. Valdespino et al.*, Appeal No. 25-50897 (Originating USDC No. 5:25-CV-00521-OLG)**

Following the Western District of Texas's sua sponte dismissal of my civil rights complaint under 28 U.S.C. § 1915(e), I filed a timely Notice of Appeal on October 28, 2025, which the U.S. Court of Appeals for the Fifth Circuit docketed as Case No. 25-50897 on October 31, 2025. The appeal sought review of nonfrivolous Fourth, Fifth, and Fourteenth Amendment claims concerning unlawful property dispossession, squatter occupation at 8402 Timber Belt, and the district court's immediate dismissal of my complaint upon granting *In Forma Pauperis* status while simultaneously denying court-assisted U.S. Marshal service under 28 U.S.C. § 1915(d).

Throughout this appellate proceeding, administrative barriers and fee-wall restrictions severely impaired my ability to litigate while homeless and indigent:

- **Omission of Evidentiary Record:** On December 8, 2025, the Electronic Record on Appeal was transmitted to the Fifth Circuit missing my photographic and documentary proof, officially certifying: **"Admitted Exhibits on File in District Court? No. Video/Audio Exhibits on File in District Court? No"** (Doc. 8).
- **Enforcement of PACER Fee Paywalls Against an Indigent Litigant:** On January 27, 2026, I filed a formal Motion for Exemption of PACER Fees (Doc. 16) to access docket updates and view appellate filings without cost while living unhoused. On February 11, 2026, the Fifth Circuit entered an order denying my motion for a PACER fee exemption (Doc. 26), maintaining a financial paywall on my access to court records despite my recognized *In Forma Pauperis* status.
- **Summary Affirmance on Defective Record:** On March 19, 2026, a Fifth Circuit panel (Higginbotham, Engelhardt, and Ramirez, Circuit Judges) issued an unpublished summary order and judgment affirming the district court's § 1915(e) dismissal without oral argument or merits analysis (Docs. 35, 36, 38-1, 38-2), and issued the final mandate on April 9, 2026 (Doc. 38, Doc. 38-3).

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this documented record establishes an actual, irretrievable legal injury caused by appellate administrative obstruction. By transmitting an incomplete electronic record stripped of exhibits, denying a PACER fee exemption to an indigent litigant, and summarily affirming the lower court's premature § 1915(e) dismissal, the Fifth Circuit ratified the district court's refusal to authorize U.S. Marshal service or allow discovery of John Doe officers. This process permanently insulated the defendants from service and extinguished my nonfrivolous property and due process claims without any opportunity for merits adjudication.

**Case 6 Appeals from *Berrocal et al. v. Auto Club County Mutual Insurance Company* (Originating USDC No. 5:25-CV-00474-FB)**

The procedural record in the U.S. Court of Appeals for the Fifth Circuit encompasses two parallel appellate tracks arising from the Western District of Texas insurance litigation (*Berrocal v. Auto Club*, No. 5:25-CV-00474-FB): (1) Interlocutory Appeal No. 25-50972, and (2) Final Appeal No. 26-50362. Both appeals were systematically obstructed and terminated through financial paywalls, technical document rejections, and administrative dismissals while I was indigent and unhoused.

**Appeal 1: Interlocutory Appeal No. 25-50972 (Severance, Form Rejection, and Withdrawal Under Protest)**

On November 21, 2025, following the District Court's prolonged delay in adjudicating my emergency motions for temporary restraining orders, interim insurance payments, and leave to amend, I filed a timely Notice of Appeal (USDC ECF No. 17), which the Fifth Circuit docketed as Appeal No. 25-50972 on November 26, 2025.

Throughout this proceeding, the Fifth Circuit created a procedural bottleneck that foreclosed meaningful review:

- **Summary Severance of Entity Appellants:** On March 23, 2026, the Clerk issued a processing notice requiring organizational co-appellants (Cycle of Management LLC and Humanity for Wisdom) to appear through retained counsel (Doc. 39). On April 10, 2026, Fifth Circuit Clerk Lyle W. Cayce entered a summary order dismissing both entities under 5th Cir. R. 42.3 for want of prosecution (Docs. 41, 41-2), ignoring my verified indigency and inability to afford legal counsel.
- **Rejection of Financial Affidavits & Administrative Deadlock:** On April 10, 2026, the Fifth Circuit entered notice of Judge Biery's order denying IFP status and ordered me to pay the appellate filing fee by May 11, 2026 (Doc. 42). When I filed an emergency Motion to Proceed IFP (Doc. 44) accompanied by a verified CJA-23 financial affidavit on April 29, 2026, the Clerk entered an administrative block stating **"DOCUMENT RECEIVED - NO ACTION TAKEN"** (Doc. 45), rejecting the sworn affidavit solely because it was submitted on a CJA-23 form rather than local form MISC-14. Although I immediately cured the defect by filing an Affidavit of Financial Status that same day (Doc. 48), the Court maintained the financial fee requirement.
- **Constructive Dismissal Under Protest:** On May 6, 2026, faced with an unresolved $605 paywall, lack of formal Rule 77(d) notice regarding the underlying March 4, 2026 final judgment, and ongoing homelessness, I filed **Appellant's Notice of Constructive Dismissal Due to Jurisdictional Blockage and Financial Impossibility / Motion to Dismiss Pursuant to Fed. R. App. P. 42** (Doc. 50). The notice formally recorded that I was withdrawing the appeal **under protest** due to the court's refusal to recognize indigent status under *Adkins v. E.I. DuPont*, the pay-to-play barriers erected against an unhoused litigant, and the necessity of transferring claims to the District of Columbia to escape the Fifth Circuit's procedural deadlock.

- **Clerk Termination:** On May 7, 2026, the Clerk entered an order granting the Rule 42(b) dismissal (Docs. 51, 51-2) and issued the mandate (Doc. 51-1).

**Appeal 2: Final Appeal No. 26-50362 (Mandatory Paywall and Summary Rule 42 Dismissal)**

Following the Western District of Texas's entry of Final Judgment dismissing the case for failure to state a claim and "want of prosecution" (USDC ECF No. 31), I filed a Notice of Appeal on April 24, 2026, which the Fifth Circuit docketed as Appeal No. 26-50362 on May 6, 2026 (Doc. 1).

The Fifth Circuit immediately shut down the appeal through a mechanical financial barrier:

- **Immediate Fee Requirement:** On May 6, 2026, the Fifth Circuit Clerk entered an immediate fee directive: **"FILING FEE IS REQUIRED. Fee due on 06/05/2026 for Appellant Henry B. Berrocal"** (Doc. 4), ignoring my established record of homelessness, zero income, and pending IFP requests.
- **Summary Dismissal for Nonpayment:** While counsel for Auto Club appeared (Docs. 5, 6), the Fifth Circuit refused to evaluate my pauper status and, on June 11, 2026, entered a summary Clerk Order terminating the appeal: **"CLERK ORDER dismissing appeal pursuant to 5th Circuit Rule 42 for failure to pay fee"** (Doc. 8).

**Denial-of-Access Analysis Under *Christopher v. Harbury*, 536 U.S. 403 (2002)**

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, this record establishes an actual, irretrievable legal injury caused by appellate administrative obstruction. The Fifth Circuit created an insurmountable financial and procedural paywall: it summarily severed corporate co-appellants, rejected sworn pauper affidavits on rigid technicalities, refused to waive appellate fees despite verified homelessness, and dismissed the final appeal under Rule 42 solely for nonpayment of fees. This administrative blockade directly forced the withdrawal under protest of Appeal No. 25-50972 and caused the summary extinction of Appeal No. 26-50362, permanently foreclosing federal appellate review of my nonfrivolous insurance recovery and property damage claims on the merits.

## Case 7 The "Mootness Loop" as a Tool for Obstruction

***In re Henry B. Berrocal*, No. 25-50943 (Mandamus on WDTX Delay in 5:25-CV-503)**

- **The Court's Stated Reasoning:** The Fifth Circuit denied mandamus relief by claiming the issue was "moot" because District Judge Biery finally issued orders on February 18 and March 4, 2026, denying the emergency motions for expedited trial, early discovery, and U.S. Marshal service.
- **The Expanded *Harbury* Injury:** The Fifth Circuit weaponized the concept of "mootness" to excuse structural court delay. By sitting on the mandamus petition for five months (from November 2025 to April 2026), the appellate court allowed the district court's clock to run out on the 90-day service window under Rule 4(m).

- **The Structural Blockade:** When a district court refuses to authorize U.S. Marshal service or John Doe discovery for an indigent, unhoused litigant, the case is completely paralyzed. By waiting until the district court finally issued *blanket denials* to declare the mandamus petition "moot," the Fifth Circuit validated a procedural trap: the district court starved the case of process until it died, and the appellate court used that very death to refuse supervisory intervention. This permanently destroyed the underlying civil rights claims without a single evidentiary review.

## Case 8 Supervisory Disclaimer" to Insulate Hostile Magistrates

***In re Henry B. Berrocal*, No. 25-51012 (Mandamus on Magistrate Misconduct in 5:25-CV-453)**

- **The Court's Stated Reasoning:** The Fifth Circuit refused to review Magistrate Judge Farrer's December 2025 order (which struck three pro se motions and threatened sanctions), citing *United States v. Raddatz* to claim the appellate court "neither monitor[s] nor supervise[s] the work of magistrate judges" and that the petitioner had to complain to the district judge first.
- **The Expanded *Harbury* Injury:** The appellate panel used a jurisdictional technicality to abandon its duty under the All Writs Act to prevent judicial abuse. The magistrate judge did not merely deny motions; he *struck them from the record* and threatened Rule 11 monetary sanctions against a homeless pro se litigant for attempting to seek discovery and schedule hearings.
- **The Structural Blockade:** Threatening an indigent litigant with financial sanctions for filing standard procedural motions creates an unconstitutional chilling effect. By refusing to intervene, the Fifth Circuit endorsed a hostile environment where a pro se plaintiff is terrorized into silence. If filing a motion triggers a sanction threat, and the appellate court refuses to review it, the litigant is effectively physically barred from the courthouse, extinguishing all underlying claims.

**Federal supreme court no access to the courts**

**Case 1. In re berrocal henry No. 24-5879**

Beginning in June 2024, after Texas state courts refused to adjudicate my pro se speedy-trial motions and kept me detained under an unconstitutional bail increase, I sought emergency interlocutory relief directly from the Supreme Court of the United States by preparing an original petition for a writ of mandamus to enforce my Sixth and Fourteenth Amendment speedy-trial rights.

Between June and October 2024, my initial emergency petitions were repeatedly rejected and returned by the Supreme Court Clerk's Office at least six separate times for strict technical formatting deficiencies under Supreme Court Rules 14 and 20. These repetitive procedural rejections operated as an insurmountable administrative barrier because I was attempting to satisfy complex appellate formatting rules while held in maximum-security isolation at the Bexar County Adult Detention Center (Inmate #1171539), where custodial officers denied me pens, paper, envelopes, legal forms, and functional law-library access, and kept me shackled at the hands and feet during my one hour outside my cell.

Despite suffering severe medical neglect, untreated Hepatitis C, Stage 2 hypertension (blood pressure reaching 150/90), and extreme caloric deprivation, I overcame these custodial obstacles and successfully filed my formal petition. The Supreme Court accepted and docketed my case as ***In re Henry B. Berrocal*, No. 24-5879**, on October 31, 2024 (Petition for a Writ of Mandamus and Motion for Leave to Proceed *In Forma Pauperis* filed October 24, 2024). The petition was distributed for conference on December 19, 2024, and denied on January 13, 2025.

Under ***Christopher v. Harbury*, 536 U.S. 403 (2002)**, the combination of repetitive technical clerk rejections and severe custodial deprivation caused an actual, irreparable constitutional injury. Because the administrative return process delayed the docketing of my nonfrivolous emergency mandamus petition for over four months from June 2024 until late October 2024 the judicial system effectively foreclosed emergency interlocutory review of my unlawful detention, forcing me to remain incarcerated under life-threatening conditions for an additional six months until my state criminal cases were ultimately dismissed for lack of evidence.

**CASE 2 Supreme Court of the United States: Emergency Injunction Track**

**Case: *Berrocal v. Wells Fargo Bank, N.A., et al.*, Application No. 25A1119**

*(Arising from 5th Cir. Appeal No. 25-50617 & W.D. Tex. No. 5:25-CV-00279-OLG-HJB)*

**Procedural Posture & Rule 22 Emergency Application**

Following the ongoing refusal of the Western District of Texas and the Fifth Circuit Court of Appeals to conduct evidentiary hearings or stay the transfer of my property at 8402 Timber Belt, on April 8, 2026, I submitted an **Emergency Application for Injunctive Relief Under Supreme Court Rule 22** addressed to Circuit Justice Samuel Alito (assigned to the Fifth Circuit). The

Supreme Court of the United States formally docketed the application on April 10, 2026, as **Case No. 25A1119** (*Henry Berrocal, Applicant v. Wells Fargo Bank, N.A., et al.*).

The application named Wells Fargo Bank, N.A., along with judicial officers in their official capacities, and sought emergency relief to preserve the status quo pending federal review:

- **Stay of Foreclosure & Real Property Spoliation:** Requested an emergency injunction enjoining Wells Fargo and state/municipal actors from selling, transferring, conveying, or enforcing eviction actions regarding the real property at 8402 Timber Belt.
- **Return of Seized Personal Property:** Demanded the preservation and return of over $200,000 in seized personal property, vehicles, clothing, nonprofit criminological research files, and legal records.
- **Venue Transfer for Pervasive Bias:** Moved under federal recusal statutes (28 U.S.C. §§ 144, 455) to transfer all related civil rights cases (*Berrocal v. Bondi*, *Berrocal v. SAPD*, *Berrocal v. State of Texas*, *Berrocal v. Auto Club*, *Berrocal v. Samsung*, *Berrocal v. Valdespino*) to an unbiased federal forum outside the Western District of Texas (such as the District of Columbia or the Southern District of New York) to escape the systemic refusal of hearings.

**Substantive & Constitutional Grounds Presented**

The emergency application presented documented constitutional violations and demonstrated that lower-court bottlenecks created an insurmountable barrier to justice:

- **Unlawful Foreclosure & Dual-Tracking:** Set forth actionable violations of the Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), and 42 U.S.C. § 1983 for deprivation of property without due process under *Fuentes v. Shevin*, 407 U.S. 67 (1972) and *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993).
- **Irreparable Harm & Homelessness:** Established that the illegal seizure of my primary residence extinguished over $1 million in home equity, rendered me homeless, disrupted all operations of Humanity for Wisdom, and destroyed my livelihood.
- **Exhaustion Trap in Lower Courts:** Documented that over 50 days had passed with lower courts sitting on emergency filings without substantive rulings, creating an administrative delay loop that prevented effective appellate review while the underlying property was being liquidated.

**Supreme Court Disposition**

On **April 13, 2026**, Justice Samuel Alito entered an in-chambers order summarily denying the emergency application:

> **"Apr 13 2026: Application (25A1119) denied by Justice Alito."**

**Denial-of-Access Analysis Under *Christopher v. Harbury*, 536 U.S. 403 (2002)**

Under ***Christopher v. Harbury*, 536 U.S. 403, 413–15 (2002)**, this Supreme Court filing marks the complete exhaustion of every extraordinary emergency avenue available in the federal judiciary:

- **Complete Frustration of Remedies:** By the time Application No. 25A1119 reached the Supreme Court, the Western District of Texas had refused to hold evidentiary hearings on fraudulent foreclosure and active property waste, while the Fifth Circuit dismissed the interlocutory appeal as frivolous by taking judicial notice of the contested foreclosure deed.
- **The Irreversible *Harbury* Injury:** The summary denial of emergency relief under Rule 22 by Justice Alito on April 13, 2026, officially closed the final emergency gate. This left the property at 8402 Timber Belt unprotected from private liquidation and ongoing spoliation, permanently foreclosing the equitable remedies of preliminary injunction and status quo preservation without a single federal court ever conducting a live evidentiary hearing or examining the underlying proof of title fraud and squatter collusion.

**Case 3 : *Berrocal v. San Antonio Police Department-Headquarters, et al.*, Application No. 25A360**

*(Arising from 5th Cir. Case No. 25-50742 & Western District of Texas Civil Rights Litigation)*

**1. Procedural Posture & Sequential Submission Under Supreme Court Rule 22**

Following ongoing retaliatory arrests, threats to physical safety, and lower-court refusals to grant protective relief in the Western District of Texas and the Fifth Circuit Court of Appeals (Case No. 25-50742), on September 17, 2025, I submitted an **Emergency Application for Injunctive Relief (Life-or-Death Emergency)** under Supreme Court Rule 22. The Supreme Court formally docketed the matter on September 29, 2025, as **Application No. 25A360** (*Henry B. Berrocal, Applicant v. San Antonio Police Department-Headquarters, et al.*, also captioning District Judge Jason Pulliam, Magistrate Judge Henry Bemporad, and unknown Fifth Circuit judges):

- **Initial In-Chambers Submission (Justice Alito):** The application was initially submitted to Circuit Justice Samuel Alito and summarily denied on September 30, 2025.
- **Renewed Submission (Justice Sotomayor):** Pursuant to Supreme Court Rule 22.4, on October 4, 2025, I refiled the emergency application with supplemental evidence and resubmitted it to Justice Sonia Sotomayor.
- **Referral to Full Bench & Conference Distribution:** On November 12, 2025, Justice Sotomayor formally referred Application No. 25A360 to the entire Court, and the Clerk distributed the application for the Justices' formal **Conference of December 5, 2025**.
- **Plenary Court Denial:** On **December 8, 2025**, following the conference, the Supreme Court of the United States entered an order denying the application:
  **"Dec 08 2025: Application (25A360) denied by the Court."**

**Substantive & Constitutional Grounds Presented**

The emergency application presented documented constitutional violations, ongoing physical endangerment, and systemic interference with federal judicial proceedings:

- **Courthouse Arrests & Direct Interference with Filings:** Detailed my January 2024 arrest inside the Western District of Texas federal clerk's office while attempting to submit proof of service and move for default judgment, constituting an explicit physical denial of court access under *Bounds v. Smith*, 430 U.S. 817 (1977) and *Christopher v. Harbury*, 536 U.S. 403 (2002).
- **Custodial Abuse & Retaliatory Detention:** Documented the November 17, 2024 incident inside the Bexar County Adult Detention Center where jail officers subjected me to excessive force and 8-hour restraint in retaliation for requesting court preparation materials while being detained on an excessive $1,000,000 bond.
- **Property Seizure & Homelessness:** Highlighted the May 28, 2025 warrantless arrest at 8402 Timber Belt, which resulted in the total seizure and loss of my primary residence, vehicles, legal records, and business assets.
- **Systemic Bias & Demand for Multi-Case Venue Transfer:** Moved under 28 U.S.C. §§ 144 and 455 and *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), for the mandatory recusal of Western District of Texas and Fifth Circuit judges, and requested the emergency transfer of all eight interrelated federal actions (*Berrocal v. Texas*, *Berrocal v. SAPD*, *Berrocal v. Bondi*, *Berrocal v. Valdespino*, *Berrocal v. Auto Club*, *Berrocal v. Samsung*, *Berrocal v. Nissan*, *Berrocal v. Bexar County*) to an unbiased jurisdiction (such as the District of Columbia, Southern District of New York, or Northern District of California).
- **Emergency Protective Relief:** Requested federal protective orders, an injunction against warrantless detentions or forced psychiatric evaluations, and an investigation into official conspiracies under 18 U.S.C. §§ 241 and 242.

**Denial-of-Access Analysis Under *Christopher v. Harbury*, 536 U.S. 403 (2002)**

Under ***Christopher v. Harbury*, 536 U.S. 403, 413–15 (2002)**, Application No. 25A360 demonstrates the ultimate exhaustion and systemic frustration of all emergency remedies within the highest court of the federal judicial system:

- **Direct Obstruction of Underlying Merits:** The application presented an unbroken chain of physical interference ranging from courthouse arrests while filing motions to retaliatory custodial detention and property dispossession expressly designed to shut down the prosecution of active civil rights lawsuits against municipal, county, and judicial actors.
- **The Finality of the *Harbury* Loss of Remedy:** Although the emergency application successfully advanced from an individual Justice's review to formal referral and consideration by the full Supreme Court bench at the December 5, 2025 conference, the Court's summary denial on December 8, 2025, extinguished the last available avenue for extraordinary federal injunctive protection and venue reassignment. This denial left the underlying constitutional claims trapped within the Western District of Texas and Fifth

Circuit procedural deadlocks, permanently depriving me of neutral protective remedies against ongoing retaliation and court-access obstruction.

## Federal Eastern district of virginia no access to the courts

**CASE 1, 2 3 AND 4 U.S. District Court for the Eastern District of Virginia: Coordinated FTCA Dismissals, Forum Obstruction, and Pre-Filing Threats**

*(Alexandria Division Presiding: District Judge Leonie M. Brinkema)*

On April 14, 2026, having relocated from Texas to Virginia as a "Legal Refugee" due to systemic procedural paralysis and physical peril, I filed four distinct civil actions in the Eastern District of Virginia (EDVA). These cases sought judicial relief for constitutional violations, physical abuse, and administrative torts.

## I. The Four Federal Actions

**The Federal Tort Claims Act (FTCA) Actions Against the United States** These three actions asserted claims under the FTCA (28 U.S.C. § 1346(b)) following the submission of Standard Form 95 (SF-95) administrative requests:

- ***Berrocal v. United States*, No. 1:26-cv-01015 (LMB/IDD):** Sued for direct operational misconduct by U.S. Marshals Service (USMS) personnel during a January 2024 arrest in the Western District of Texas federal courthouse, alleging false arrest, illegal seizure of legal documents, medical negligence, and reckless classification resulting in placement in extreme conditions for approximately 387 days.
- ***Berrocal v. United States*, No. 1:26-cv-01019 (LMB/IDD):** Sued for systemic administrative torts specifically negligent supervision and policy failures at USMS Headquarters in Arlington, Virginia which generated and transmitted a fabricated "mentally unstable" and "extremely dangerous" classification to local holding facilities.
- ***Berrocal v. United States*, No. 1:26-cv-01020 (LMB/IDD):** Sued for institutional medical screening failures and intake policy defaults at USMS Headquarters that resulted in the interruption of treatment for chronic conditions and physical deterioration.

**The Section 1983 Action Against State Actors**

- ***Berrocal et al. v. Texas Officers et al.*, No. 1:26-cv-01021 (LMB/IDD):** Sued Bexar County prosecutors, Judge Brenda Chapman, SAPD officers, and other officials for malicious prosecution, torture, and unlawful eviction.
- **Emergency Motion to Retain Venue:** Concurrently, I filed an Emergency Motion to Retain Venue, for Severance, and for Emergency Protective Relief (Dkt. 4). This motion established extraordinary circumstances under 28 U.S.C. § 1391(b)(3), documenting that returning to Texas subjected me to live firearm attacks and bad-faith delays. It also invoked a "Market Failure" exception, providing evidence that over 200 attorneys nationwide had declined representation due to safety risks and the high-profile nature of the defendants, making strict enforcement of corporate counsel rules unconstitutional.

## II. Structural Obstruction and Summary Dismissals (April 21, 2026)

On April 21, 2026, Judge Leonie M. Brinkema issued final orders summarily terminating all four civil actions before any summons was served. The Court utilized several mechanisms to bypass the merits:

- **Dismissal *With Prejudice* on Venue and Damages Grounds:** Rather than transferring the cases to a proper venue under 28 U.S.C. § 1404(a) or § 1406(a), or dismissing them without prejudice, Judge Brinkema dismissed all four actions **with prejudice**. The Court labeled the claims "frivolous" under 28 U.S.C. § 1915(e)(2)(B) almost entirely based on the high monetary damages requested and the fact that the underlying physical arrests occurred in Texas.
- **Ignoring USMS Headquarters Jurisdiction:** In the FTCA cases, the Court claimed the EDVA had no connection to the events, willfully ignoring that USMS Headquarters is physically located in Arlington, Virginia (within the EDVA), where the challenged national classification and training policies were generated.
- **Misrepresenting FTCA Exhaustion:** The Court faulted the pleadings for not attaching physical copies of the SF-95 forms, circumventing the fact that federal notice pleading only requires a plaintiff to allege that administrative remedies have been exhausted and left unresolved for over six months.
- **Attacking Homeless/Refugee Status:** The Court scrutinized my residency by comparing pro se filings in the District of Columbia and Virginia, penalizing an unhoused litigant fleeing physical danger for lacking a static postal address.

## III. Institutional Tech Bans: Deprivation of Electronic Tools

Litigation in the EDVA was severely crippled by the court's strict local building policy prohibiting pro se litigants from bringing cell phones, laptops, or digital storage devices into the Alexandria federal courthouse. While licensed attorneys are routinely permitted to enter with electronic devices, unrepresented individuals are forced to surrender them.

- **Denial of Case Materials:** As an unhoused litigant, my legal files, exhibits, and PACER access were entirely digital. Barring these devices stripped me of the ability to inspect court records, correct filing defects in real time, or access digital drafts inside the clerk's office.
- **Asymmetric Litigation Handicap:** Denying pro se litigants the right to use modern technology to manage federal dockets creates an unequal barrier, leaving unrepresented parties unable to present digital evidence or verify docket entries on equal footing with opposing counsel.

## IV. Total Docket Freeze and Pre-Filing Injunction Threats

In her final orders, Judge Brinkema imposed severe chilling measures designed to block all future access to the court:

- **Docket Lockdown:** The Court explicitly ordered the Clerk's Office not to accept any further pleadings in any of the four civil actions other than a notice of appeal, cutting off any ability to file motions for reconsideration or introduce supplemental evidence.
- **Pre-Filing Injunction Warning:** The Court issued a formal sanction threat, declaring that any further civil complaints dismissed as frivolous would result in the entry of a permanent pre-filing injunction.

## V. Denial-of-Access Analysis Under *Christopher v. Harbury*, 536 U.S. 403 (2002)

Under ***Christopher v. Harbury*, 536 U.S. 403, 413–15 (2002)**, the combination of these judicial and administrative actions resulted in a total, irretrievable loss of legal remedies:

1. **Res Judicata Extinction of Meritorious Claims:** By utilizing § 1915(e) to dismiss all four complaints *with prejudice* on purported venue and damages grounds—rather than executing a standard venue transfer—the Court permanently barred the FTCA claims against USMS Headquarters and the Section 1983 claims against Texas state actors from ever being heard on the merits in any federal forum.
2. **Systemic Chilling of Petition Rights:** The combination of an electronic device ban that disarms pro se advocacy, an absolute docket freeze refusing new motions, and the explicit threat of a pre-filing injunction constructed a hostile procedural wall. This completely chilled the First Amendment right to petition the government, transforming the federal courthouse into an inaccessible forum for an indigent legal refugee

## Federal district Southern District of New York no access to the courts

**U.S. District Court for the Southern District of New York: The Venue Transfer Trap**

**Case: *Berrocal v. Boyd et al.*, Civil Action No. 1:24-cv-07172-LTS**

Fleeing physical danger, documented retaliation, and a total collapse of due process in Texas, I sought a neutral federal forum by filing a civil rights complaint in the Southern District of New York (SDNY) on September 18, 2024. The action, styled ***Berrocal v. Boyd***, named Texas District Judges Stephanie Boyd and Joel Perez, and Bexar County Sheriff Javier Salazar as defendants.

Rather than recognizing the extraordinary circumstances or the functional unavailability of the Texas courts, the SDNY mechanically weaponized federal venue statutes to reject the case:

- **The Mechanical Transfer:** On September 24, 2024, Chief Judge Laura Taylor Swain issued a Transfer Order under 28 U.S.C. § 1406(a). The Court strictly applied 28 U.S.C. § 1391(b) to conclude the matter "properly" belonged in the Western District of Texas (where Bexar County is located), explicitly refusing to retain jurisdiction in the interests of justice.
- **Appellate Blockade:** To prevent any challenge to this transfer, Chief Judge Swain preemptively certified under 28 U.S.C. § 1915(a)(3) that any appeal from the order would

not be taken in good faith, denying *In Forma Pauperis* status for the purpose of an appeal and closing the door to Second Circuit review.

- **Electronic Execution:** On October 3, 2024, the case was electronically transferred out of the SDNY and dumped directly back into the Western District of Texas, where it was docketed as Case No. 5:24-cv-01126.

**Denial-of-Access Analysis Under *Christopher v. Harbury*, 536 U.S. 403 (2002)**

Under the *Harbury* framework, an actionable denial of access to the courts occurs when official acts completely frustrate a nonfrivolous claim, resulting in the irretrievable loss of a remedy. The SDNY's handling of *Berrocal v. Boyd* illustrates how discretionary venue transfers can operate as instruments of obstruction when a court ignores the realities of systemic persecution.

By transferring a legal refugee's civil rights complaint directly back to the jurisdiction controlled by the very authorities causing the harm, the SDNY effectively ensured the destruction of the lawsuit. This mechanical routing functions analogously to historical atrocities where victims of systemic persecution were forced to seek relief from tribunals actively controlled by their abusers. Immediately upon transfer, the case was subjected to the exact pattern of non-docketing, delay, and procedural hostility I had fled the SDNY to avoid, completely frustrating the litigation and permanently extinguishing any hope of a neutral merits adjudication.

## Pacer fees issues NO ACCESS TO THE COURTS

The federal judiciary's continued reliance on the PACER paywall, combined with clerk refusals to provide electronic service, operates as a structural blockade against unhoused and targeted litigants. Conditioning access to court records on per-page fees while simultaneously denying email service to individuals who have been displaced, falsely arrested, or detained creates a modern, digital denial of access to the courts under *Christopher v. Harbury*, 536 U.S. 403 (2002).

When the judicial system forces an indigent litigant to rely on physical mail while they are homeless or incarcerated, and then erects a financial barrier to viewing the electronic docket, the right to petition the government is effectively extinguished.

### The Constitutional Invalidity of the PACER Paywall

The Supreme Court has consistently held that the state cannot condition fundamental access to the justice system on an individual's ability to pay.

- In ***Griffin v. Illinois*, 351 U.S. 12 (1956)**, the Court struck down financial barriers to appellate review, establishing that justice cannot be rationed by wealth.
- In ***M.L.B. v. S.L.J.*, 519 U.S. 102 (1996)**, the Court reinforced that fee requirements that completely foreclose judicial access for the indigent violate due process and equal protection.

- In ***Bounds v. Smith*, 430 U.S. 817 (1977)**, the Court mandated that meaningful access to the courts requires providing the actual tools necessary to litigate a claim.

In 2026, the essential tool for litigation is the electronic docket. Charging over $300 in cumulative per-page PACER fees to an unhoused litigant as explicitly enforced in *Berrocal v. Valdespino* when the Fifth Circuit denied a PACER fee exemption to a recognized *In Forma Pauperis* appellant violates these mandates. Imposing these costs on an indigent plaintiff constitutes an excessive financial penalty under the **Eighth Amendment** and a direct physical barrier to the **First Amendment** right to petition.

## The Service Blackout and Weaponized Procedure

The administrative refusal by court clerks and opposing counsel to provide filings via email is economically irrational and procedurally fatal for displaced litigants. Emailing a PDF is instantaneous and free; printing, processing, and mailing paper copies is costly and slow.

For a litigant navigating the dockets in *Berrocal v. Bondi* or *Berrocal v. Valdespino*, paper-only service is a death sentence for the litigation. When a plaintiff is illegally arrested inside a federal courthouse, placed in maximum-security detention with violent offenders, or rendered homeless through an illegal foreclosure, a physical mailing address ceases to exist. By refusing to transmit orders electronically and blocking free PACER access, the courts create a purposeful blind spot. The litigant cannot see pending motions, cannot track deadlines, and is inevitably defaulted or dismissed for "want of prosecution" not because they abandoned the case, but because the court intentionally severed their only line of sight.

## The Exemption Imperative for Civil Rights Researchers

Investigating civil rights violations, judicial misconduct, and criminology is a zero-incentive, high-risk public service. For nonprofit researchers, journalists, and advocates, accessing court records is necessary to expose systemic corruption, title-washing, and retaliatory arrests.

Charging researchers to access the very dockets that contain evidence of institutional misconduct creates an insurmountable conflict of interest. The system cannot logically expect individuals to risk their physical safety, freedom, and financial survival to investigate public servants, only to have the implicated institution charge them per page to view the evidence. To satisfy the First Amendment right of public access to judicial proceedings and ensure institutional oversight, PACER and electronic filing systems must provide absolute fee exemptions for unhoused individuals, nonprofit criminology researchers, and civil rights advocates.

A system that demands physical presence from a litigant whose life is actively threatened, relies on paper mail for someone who is unhoused, and charges digital tolls to someone with zero income is not an instrument of justice. It is an administrative weapon designed to ensure that systemic abuses remain entirely off the record.

## APPELLATES AND DELAY AS ATTRITION TO NO ACCESS TO THE COURT

Appellate review is not an adequate remedy for the active, ongoing violation of the constitutional right of access to the courts. Traditional appellate timelines routinely consume one to two years a duration that, for a targeted and unhoused litigant, converts procedural delay into a direct mechanism of constitutional injury. A right vindicated only after a plaintiff has suffered unlawful detention, loss of property, retaliatory violence, and severe health deterioration is not meaningful access. It is a procedural illusion.

Courts cannot bury civil rights claims under the pretext of orderly process when immediate relief is necessary to halt ongoing, irreparable harm. When access to the courts is the very right being obstructed, forcing a litigant to rely on that same obstructed system through a prolonged, multi-year appeal compounds the violation and guarantees the destruction of the underlying claim.

**Survival Deprivation as a Procedural Weapon** Homelessness and economic exhaustion are actively weaponized in federal litigation through administrative attrition. Monthly survival costs shelter, food, medical care, and transportation accrue relentlessly while courts stall proceedings. When emergency motions are ignored and cases are prolonged against a litigant deliberately deprived of resources, the inevitable result is dismissal for "want of prosecution," missed deadlines, or procedural default. This dynamic transforms judicial delay into a lethal enforcement mechanism against constitutional claims.

Meaningful litigation requires a baseline functional capacity. A homeless litigant deprived of food, shelter, medical care, and internet access cannot realistically monitor digital dockets, meet arbitrary filing deadlines, or prepare complex pleadings. When a court recognizes a litigant's indigency through *In Forma Pauperis* (IFP) status, it must logically acknowledge that access to justice requires basic survival. Narrowly tailored equitable intervention is required during the pendency of access-to-courts litigation to facilitate basic communication, shelter, and medical access, ensuring that survival deprivation is not utilized as a de facto barrier to judicial participation.

**Systemic Accountability and Empirical Tracking** The integrity of the judicial system requires transparent, objective evaluation of how courts handle expedited motions and IFP applications. Unnecessary litigation delays deliberately inflate the financial and psychological burden on indigent litigants, forcing prolonged reliance on public assistance and emergency resources. Efficient, procedurally correct adjudication resolves claims on the merits, reducing both litigation costs and public resource strain.

Systemic tracking of administrative bottlenecks is essential to expose structural obstruction. Specifically:

- **IFP Denial Rates:** Disproportionately high denial rates of *In Forma Pauperis* applications for documented indigent litigants reveal the weaponization of filing fees as an access barrier.

- **Emergency Motion Paralysis:** Systemic delays in processing pro se emergency motions and requests for injunctive relief indicate a structural refusal to enforce the status quo or protect litigants from ongoing harm.
- **Ad-Hoc Dismissals:** High rates of sua sponte dismissals for "want of prosecution" against pro se litigants actively attempting to file motions demonstrate the use of docket management to clear civil rights cases without merits adjudication.

Transparent measurement of these specific indicators is required to enforce accountability, ensure equitable access, and dismantle the administrative blockades used to silently suffocate civil rights litigation.

# Declaratory ruling, injunctions, and reliefs

Because access to the courts is meaningless if litigants cannot survive the financial and personal costs of filing, Plaintiff seeks narrowly tailored compensation sufficient to cover filing costs, travel and delay expenses, and other burdens caused by systemic obstruction, **in addition to declaratory and injunctive relief**. This ensures that access is not just theoretical, but practical and enforceable  allowing litigants to actually exercise their constitutional rights without being blocked by economic or logistical barriers.

-Allow any journalist, homeless individual, federal non-profitt organization to have access and exemption to pacer freedom of fees for the convenience of 1st amendment access to the courts, the freedom to investigate public servants (press), and in the interest to no deny homeless individuals or low income access to the courts and freely navigate judges rulings, attorney as the fees seems to be a wall to block people 1st amendment and 8th amendment. In 2026, this is no longer for convenience and is a need for freedom of the press, and to avoid excessive fees

elief sufficient to remedy and prevent the systemic denial of access to the courts described in this action. The relief requested is structural, injunctive, declaratory, and remedial in nature because the constitutional violations are ongoing and because ordinary remedies are unavailable or ineffective. (all cases are in the exhibits)

I seek a declaratory judgment that the practices described in this action violate the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, including the right to petition the government for redress, meaningful access to the courts, due process of law, freedom from retaliation, the right to counsel, and equal protection of the laws.

I  request the immediate preservation of all evidence related to obstruction of court access, including clerk intake logs, docketing and rejection records, emergency-motion handling records, kiosk access logs, shackling policies, grievance logs, jail property logs, legal mail logs, and courthouse and detention-facility video recordings, in order to prevent spoliation of evidence in all state of texas courts and federal courts i file petitions since 2023.

preliminary and permanent injunctive relief requiring detention facilities and custodial authorities to provide pens, paper, envelopes, postage, and federal and state legal forms, and prohibiting shackling or physical restraints during legal work, kiosk access, legal mail preparation, or filing activity, because physically impossible access is not meaningful access.

-The imposition of a minimum detainee legal-tool mandate requiring that every detention facility provide basic legal tools on request, including writing materials, confidential legal mail, and filing access, as a non-discretionary obligation.

-I demand injunctive relief requiring functional law-library access, including updated federal and state legal materials, electronic access where available, a reasonable time for legal research and drafting, and accommodations for indigent and pro se litigants whose access would otherwise be illusory.

-The appointment of an independent Special Master with audit, investigative, and enforcement authority to review clerk practices, judicial handling of emergency motions, detention-facility access policies, and patterns of delay and obstruction, and to issue binding remedial directives. The Special Master must be authorized to ensure detainees are able to file time-sensitive pleadings, including speedy-trial motions and motions to suppress.

-Create structural relief, creating venue flexibility for litigants facing systemic obstruction. Where two or more judges engage in repeated delays, denial of emergency motions, denial of in forma pauperis status, skipped hearings, retaliatory dismissals, or obstruction of filings, litigants must be permitted to file in an alternative federal venue or seek transfer to challenge jurisdiction and venue without penalty or delay.

Acknowledgment that enforcing constitutional rights costs money and that the absence of meaningful remedies incentivizes violations. I seek compensatory relief to the extent permitted by law for litigation-related costs caused by obstruction to be ruled by the court or public trial and challenge immunity doctrines to establish rules by trial.

address of anti-retaliation safeguards prohibiting arrests, bond increases, punitive detention conditions, transfers, or adverse actions taken in response to filing grievances, lawsuits, emergency motions, or court advocacy, and expedited judicial review of any such action.

Implement systemic transparency measures, AI-assisted anomaly detection with human oversight, enforcement of judicial misconduct accountability, remedial review of past obstructed cases, mandatory training and accountability for clerks, jail staff, and judges, and contempt and sanctions for knowing/delay obstruction.

This Court must acknowledge that federal courts do not operate equally across districts and circuits. Some courts adjudicate cases efficiently and in good faith, while others exhibit chronic delay, extreme dismissal rates, procedural gatekeeping, and hostility toward civil-rights, immigration, consumer protection, and pro se litigation. These disparities are systemic, geographic, and unconstitutional.

-The record supports recognition that regional and cultural bias, including ex-confederate-era hostility toward civil-rights enforcement in certain Southern state,s continues to influence judicial administration. Such bias manifests through retaliation, obstruction, denial of emergency relief, denial of in forma pauperis status, and deliberate burial of cases through delay and procedural abuse. This violates equal protection and meaningful access to the courts.

-A new doctrine is required: where cultural bias, systemic retaliation, or demonstrable obstruction exists within a federal district or circuit, immediate venue transfer or reassignment must be available in all categories of federal cases. This doctrine must apply when patterns show repeated delay, dismissal, refusal to hear emergency motions, or hostile treatment of pro se litigants. Ordinary venue rules cannot override constitutional access.

Patterns to be analyzed include: delays in responses to motions, delays in emergency responses, delays in trial scheduling, delays in settlements, dismissal rates in each federal category, average time to respond to emergency filings, average time to respond to motions, and dismissal rates of forma pauperis cases. These measures must be recorded by judge's signature and court rate, and a total nationwide United States public website should be available to show absurdity or efficiency in courts.

These metrics must be analyzed by artificial intelligence and human review to start comparisons, foster competition between courts, and evaluate inefficiency. This will help identify judges or courts that are so inefficient or absurd that corrective action, including potential revocation, is necessary.

This doctrine also works in reverse: if a judge or two are systematically targeting someone based on metrics like time to dismissal, response to emergency motions, response to motions, or in forma pauperis acceptance rates, the pattern can be detected and corrected. For example, if a judge has an average 7-day response time and 90% in forma pauperis acceptance, but two of their cases involving claims of homelessness experience 30-day delays for emergency motions or remain unanswered while the court average is 7 days, another court can intervene to correct the situation. This is meant to enforce immediate action based on measurable rates and promote efficiency nationwide, holding judges accountable for delays, systematic obstruction, and abuse of discretion. Why does a federal court in Carolina respond within 24 hours while a court in Texas takes 30 days? Are they ignoring the law, retaliating, or is their absurdity so extreme that they should find another job entirely?

The system should also be evaluated by rate of filings. While it is true that some counties or districts have larger populations, court performance should be measured relative to the number of people interacting with the court. Metrics can analyze efficiency based on averages of 10, 100, or 1,000 people per court. These metrics can be tracked over one year for each subject of law in a federal district, immigration, civil rights, the Magnuson Act, antitrust cases, and all others, recording both the average judge response time and the outcomes for individual filings. Were cases dismissed unfairly? Did individuals face arrest or obstruction? Were they prevented from entering courthouses? It is time to make judicial efficiency a matter of law, ensuring that all

courts follow Supreme Court precedent in each district rather than acting on personal judicial misbeliefs.

This system also allows people to analyze historical and present statistics, identifying courts that have consistently been inefficient and allowing for corrective measures. Even within a national metric of slowness, trends will reveal problems. For example, if the national average response time is 7 days and Texas courts average 30 days, and that changes to 15 days in some cases or 45 days in others, it signals inefficiency. Such data can guide interventions, sanctions, or removal of judges for their persistent incompetence, increasing public awareness and holding courts accountable for delays and obstruction.

Even if clerks or judges attempt to manipulate metrics to appear efficient, any individual filing a complaint such as in Texas, reporting massive delays contrary to reported statisticsconstitutes manipulation of court records and obstruction. Such acts are already punishable under the U.S. Code, and courts must be held accountable for providing false data or concealing inefficiency.

Appeal is not an adequate remedy for access to courts violations. Appeals routinely take one to two years or longer. During that time, litigants suffer irreparable harm, including detention, homelessness, loss of property, retaliation, or death. Courts may not dig down, bury, or procedurally exhaust civil-rights claims under the pretext of process when immediate relief is required. Provide and extend public assistance to those in need while in litigation

Plaintiff requests that the Court recognize that a grant of in forma pauperis status must ensure meaningful access to litigation, not merely waiver of filing fees. Where a litigant demonstrates indigency sufficient to qualify for in forma pauperis status, the Court should acknowledge that basic survival conditions are necessary to sustain ongoing litigation. Without minimum subsistence, access to the courts becomes illusory.

Accordingly, Plaintiff seeks relief providing that, where indigency is established:

• **Health Access Protection** Assurance of uninterrupted access to necessary medical care during litigation.

• **Food Security Protection** Access to food assistance sufficient to maintain physical ability to participate in court proceedings.

• **Housing and Shelter Stability** Rental or shelter assistance sufficient to prevent homelessness during active litigation.

• **Utilities and Communication Access** Access to electricity, internet, and communication tools necessary to receive court filings and respond to deadlines.

Plaintiff further requests recognition that where obstruction, delay, or bad-faith conduct by a defendant prolongs litigation and exacerbates indigency, the Court may equitably shift survival-related litigation costs and associated subsistence burdens to the responsible party as

part of its remedial authority. Pay it to the USA government, and pay an extra fee to the plaintiff for the massive burden

In forma pauperis status should not function as a symbolic waiver of fees while a litigant remains unable to survive, communicate, or meaningfully participate in proceedings. Access to the courts requires functional capacity to litigate. Otherwise homeless pro se litigation is an illusion.

Independent supervision is necessary. Appointment of a Special Master or supervisory authority is required to identify and prevent judicial and clerk bias, retaliation, and obstruction. This authority must be empowered to compel docketing, enforce emergency consideration, override abusive procedural gatekeeping, and order reassignment or transfer where bias is evident. This mechanism is necessary precisely because appellate review is too slow to prevent ongoing constitutional injury.

Pro se status must not be treated as a justification for hostility, heightened scrutiny, dismissal, or retaliation. The systemic use of pro se status to dig down claims, deny emergency relief, impose impossible procedural standards, or accelerate dismissal constitutes a denial of civil-rights enforcement and chills access to the courts.

When courts use delay, dismissal, or procedural obstruction to avoid adjudicating civil-rights claims, the judiciary itself becomes an enforcement mechanism for unconstitutional conduct. Structural intervention is therefore required to restore meaningful access and prevent courts from functioning as barriers rather than forums for justice.

Plaintiff remains homeless. The State of Texas confiscated Plaintiff's car, clothing, house, and personal property, leaving Plaintiff with nothing. Filing these lawsuits has required living out of a $20,000 F-450 truck, paying travel expenses, and incurring additional damages caused by being forced to leave Texas due to what Plaintiff characterizes as confederate-era persecution and retaliation by the State of Texas. Plaintiff requests reimbursement of all costs and fees associated with bringing this action, to the extent permitted by law, and any additional relief the Court deems just and equitable.

Nationwide declaratory relief to be recognizable everywhere in the USA, acknowledging all the issues in the relief section

**JURY DEMAND** Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

/S/HENRY B. BERROCAL date 08/27/2026 Henry Berrocal

210 773 1148 berrocalhenry08@gmail.com humanityforwisdomllc@gmail.com